IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ANITA A. NAGEL,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

Civ. No. 1:17-cv-00193-MC

**OPINION & ORDER**

_____

McSHANE, District Judge:

Plaintiff Anita Ann Nagel seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying disability and disability insurance benefits pursuant to Title II and supplemental security income pursuant to Title XVI of the Social Security Act. For the reasons set forth below, the decision of the Commissioner is AFFIRMED and this case is DISMISSED.

## BACKGROUND

Plaintiff filed a Title II application for a period of disability and disability insurance benefits on July 23, 2013, and a Title XVI application for supplemental security income on July 9, 2013. Tr. 13. Plaintiff alleged disability beginning July 9, 2011. *Id.* Her applications were denied. *Id.* Plaintiff appeared by video conference before an Administrative Law Judge ("ALJ") at a hearing held May 7, 2015. *Id.* On July 23, 2015, the ALJ issued a decision finding Plaintiff not disabled. Tr. 24. The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. Tr. 1. This appeal followed.

# DISABILITY ANALYSIS

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r*, 648 F.3d 721, 724 (9th Cir. 2011).

> The five-steps are: (1) Is the claimant presently working in a substantially gainful activity? (2) Is the claimant's impairment severe? (3) Does the impairment meet or equal one of a list of specific impairments described in the regulations? (4) Is the claimant able to perform any work that he or she has done in the past? and (5) Are there significant numbers of jobs in the national economy that the claimant can perform?

*Id.* at 724-25; *see also Bustamante v. Massanari,* 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Bustamante*, 262 F.3d at 953. The Commissioner bears the burden of proof at step five. *Id.* at 953-54. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999); *see also* 20 C.F.R. §§ 404.1566; 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54.

## THE ALJ'S FINDINGS

The ALJ performed the sequential analysis. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of July 9, 2011. Tr. 15. The ALJ determined that Plaintiff had the following severe impairments: obesity, lumbar degenerative disc disease, and bilateral knee osteoarthritis. Tr. 16. The ALJ determined that Plaintiff's severe impairment did not meet or equal a listed impairment. Tr. 18.

The ALJ determined that Plaintiff had the RFC to perform sedentary work with the following additional limitations: she is limited to frequent balancing, occasional crawling, crouching, stooping, and climbing of ramps and stairs; she cannot kneel or climb ladders, ropes, and scaffolds; she should avoid concentrated exposure to vibration; and she should avoid all exposure to heights, moving machinery, and similar hazards. Tr. 19.

Plaintiff has a limited education and is able to communicate in English. Tr. 23. The ALJ found that Plaintiff was unable to perform any of her past relevant work. Tr. 22. Based on her RFC, the ALJ determined that Plaintiff was able to perform work as a charge account clerk, a document preparer, or a table worker. Tr. 23-24. Accordingly, the ALJ determined that Plaintiff was not disabled. Tr. 24.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r*, 359 F.3d 1190, 1193 (9th Cir. 2004). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation and internal quotation marks omitted). In reviewing the Commissioner's alleged errors, this court must

weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is rational. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

When the evidence before the ALJ is subject to more than one rational interpretation, courts must defer to the ALJ's conclusion. *Batson*, 359 F.3d at 1198 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995)). A reviewing court, however, cannot affirm the Commissioner's decision on a ground that the agency did not invoke in making its decision. *Stout v. Comm'r*, 454 F.3d 1050, 1054 (9th Cir. 2006). Finally, a court may not reverse an ALJ's decision on account of an error that is harmless. *Id.* at 1055–56. "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

## DISCUSSION

Plaintiff alleges the ALJ erred by (1) failing to find a severe shoulder impairments at step two of the analysis; (2) failing to make equivalency findings at step three of the analysis; (3) improperly rejecting Plaintiff's subjective symptom testimony; and (4) improperly weighing the medical opinion evidence.

### I. Step Two

Plaintiff asserts the ALJ erred by finding Plaintiff's shoulder impairments non-severe at step two of the sequential analysis. At step two, the ALJ must determine if an impairment is "severe." 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment is not severe if the evidence establishes only a slight abnormality that has no more than a minimal effect on an individual's ability to do work. *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).

Step two is merely a threshold determination to screen out weak claims. *Bowen v. Yuckert*, 482 U.S. 137, 146-47 (1987). The Ninth Circuit has recently clarified that:

> [Step two] is not meant to identify the impairments that should be taken into account when determining the RFC. In fact, in assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not "severe." The RFC therefore *should* be exactly the same regardless of whether certain impairments are considered "severe" or not.

*Buck v. Berryhill*, 869 F.3d 1040, 1048-49 (9th Cir. 2017) (internal quotation marks, citations and alterations omitted, emphasis in original).

In *Buck*, the Ninth Circuit noted that because step two had been resolved in the claimant's favor he "could not possibly have been prejudiced," and "[a]ny alleged error is therefore harmless and cannot be the basis for a remand." *Id.* at 1049. In this case, as in *Buck*, the ALJ resolved step two in Plaintiff's favor. Tr. 16. Any failure to include Plaintiff's shoulder condition among her "severe" impairments is therefore harmless.

"The mere diagnosis of an impairment" is not sufficient to sustain a finding of disability. *Key v. Heckler*, 754 F.2d 1545, 1549-50 (9th Cir. 1985). The ALJ must consider evidence of functional limitations in formulating the RFC. *Burch*, 400 F.3d at 683-84. The Court therefore turns to the record to consider whether the ALJ properly discounted Plaintiff's shoulder impairment in formulating her RFC.

In March 2014, Dr. Brandan Hull, Plaintiff's treating physician, found that, despite pain from having fallen on her left side, she was able to reach overhead and suffered no loss of strength. Tr. 552-53. He suspected that Plaintiff suffered from muscle tears and prescribed home exercises. Tr. 553. When Plaintiff saw Dr. Hull a few days later, he did not list shoulder pain as a medical issue. Tr. 547-49.

In April 2014, Plaintiff fell getting out of the shower and was seen by Katherine Lohrfink, FNP. Tr. 543. Plaintiff reported shoulder pain, which Ms. Lohrfink found was "prior injury/pain aggravated more by fall." Tr. 545. She prescribed the use of shoulder sling for one week and the continuation of light stretches and exercises prescribed by Dr. Hull. *Id.*

In August 2014, Plaintiff was seen by Tatyana Wright, PA. Tr. 531. Plaintiff reported shoulder pain for "4-5 month[s]" with no injury. *Id.* Ms. Wright found Plaintiff's shoulder to be tender and painful on examination. Tr. 533. She assessed "rotator cuff dysfunction" and referred Plaintiff for a shoulder x-ray and physical therapy. *Id.*

Plaintiff was seen in September 2014 by Dr. Hull, who reviewed her x-rays and found a "questionable acromial spur." Tr. 527. The x-ray otherwise showed "unremarkable" soft tissue. Tr. 576. Dr. Hull's notes indicate that Plaintiff's shoulder pain had not improved since onset and that the physical therapist "was reluctant to work on her shoulder due to risk of rotator cuff tears." Tr. 614. On examination, Dr. Hull found that Plaintiff could reach behind her head with pain, but expressed "concern for tears" and referred Plaintiff for an MRI. Tr. 615.

In December 2014, Plaintiff tripped on a cot and suffered a laceration. Tr. 604. Ms. Wright listed "rotator cuff dysfunction" as one of Plaintiff's medical issues, but no shoulder-related issues were noted in Plaintiff's physical exam. Tr. 605, 607. Plaintiff was given Percocet for her back and shoulder pain and Ms. Wright referred her for an orthopedic examination. Tr. 608.

In February 2015, Plaintiff was seen by Dr. Hull for bronchitis. Tr. 623. Plaintiff's shoulder issues were no longer listed as medical issues. Tr. 624. The following month, "Rotator cuff dysfunction, left" was once again listed among Plaintiff's diagnoses, but Plaintiff did not

complain of any shoulder issues during the visit, nor did Dr. Hull note any shoulder issues in his physical examination of Plaintiff. Tr. 618-20.

The ALJ found Plaintiff's shoulder impairment was not severe based on a lack of continuing treatment or definitive diagnosis with evidence of functional limitations. Tr. 16. Although Plaintiff testified that she suffers from severe shoulder paint and, as noted above, some treatment notes indicate shoulder pain, no medical provider made any diagnosis or suggested that she suffered from functional limitations as a result of her shoulder. Tr. 53, 552. At counsel's request, ALJ held the record open for two months in order to allow Plaintiff's counsel to submit medical records concerning Plaintiff's shoulder, but no such records were submitted. Tr. 16.

The Court concludes the ALJ did not err by finding Plaintiff's shoulder pain to be non-severe at step two of the analysis. In the absence of any medical evidence supporting functional limitations related to Plaintiff's shoulder, the Court concludes that the ALJ did not err in formulating Plaintiff's RFC.

**II.  Step Three**

Plaintiff asserts the ALJ erred by failing to find that the combined effect of her knee and spine impairments medically equaled a listed impairment.

At step three of the sequential analysis, the Commissioner must determine whether a claimant's impairments meet or equal one of the listed impairments and are so severe that they preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed impairments). The plaintiff bears the burden of demonstrating that she has an impairment that meets or equals a listed impairment. *Burch*, 400 F.3d at 683. A

plaintiff must show that she meets all of the criteria contained in the Listing in order to demonstrate medical equivalence. *Kennedy v. Colvin*, 738 F.3d 1172, 1174 (9th Cir. 2013).

For a claimant to qualify for benefits at step three "by showing that [her] combination of impairments is 'equivalent' to a listed impairment, [s]he must present medical findings equal in severity to *all* the criteria for the one most similarly listed impairment." *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990) (internal quotation marks and citation omitted). "[A] finding of equivalence must be based on medical evidence only." *Lewis v. Apfel*, 236 F.3d 503, 514 (9th Cir. 2001). "Moreover, an ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination unless the claimant presents evidence in an effort to establish equivalence." *Kennedy*, 738 F.3d at 1178 (internal quotation marks and citation omitted).

In this case, the ALJ considered Plaintiff's impairments relative to Listing 1.02(A), which covers inability to ambulate due to major dysfunction of joints, and Listing 1.04, which covers disorders of the spine. Tr. 18.

For Listing 1.02(A), inability to ambulate effectively means an extreme inability to walk and is defined generally as having insufficient lower body functioning to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. This includes the inability to walk without the assistance of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping or banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. 20 C.F.R. Part 404, Appendix 1, Subpart P.

In this case, the ALJ found that the medical record did not support a finding that Plaintiff was unable to ambulate well enough to complete activities of daily living. Tr. 18. The ALJ further noted that there was no medical evidence that Plaintiff needed or used any assistive devices. *Id.* Plaintiff reported that she uses crutches or a walker, but her mother's report indicated that did not use such assistive devices. Tr. 265, 273. Although the record indicates that Plaintiff did use crutches for a time after a fall, Tr. 504, 556, 565, her medical records do not otherwise suggest the regular or long-term use of a walker or other assistive device. Tr. 552-53, 556-57; *see also* Tr. 295 (March 2010 medical report "She currently walks without any assistive devices."). The Court concludes that the ALJ's finding that Plaintiff did not meet Listing 1.02 was properly supported.

Listing 1.04 covers disorders of the spine resulting in compromise of a root nerve or the spinal cord. 20 C.F.R. Part 404, Appendix 1, Subpart P. There must be evidence of one of three conditions: nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss accompanied by sensory or reflex loss and, if there is involvement of lower back, positive straight-leg raising test (sitting and supine); spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours; or lumbar spinal stenosis, resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting inability to ambulate effectively. *Id.*

In this case, the ALJ found that Plaintiff did not satisfy the requirement of Listing 1.04 because there was no evidence of positive straight leg raise tests in the sitting and supine

positions and because there was no evidence of spinal arachnoiditis or pseudoclaudication. Tr. 19. The only evidence of a positive straight leg raise was from an October 2012 examination by PA Jose Parker, subsequently signed by David Walker, M.D., which noted "Straight leg raise – Right: radiates right, Left: normal." Tr. 677. The ALJ noted that neither Mr. Parker nor Dr. Walker explained what that note meant in terms of positive or negative results, nor did they note whether they performed the test in the sitting or supine position. Tr. 19. The exam notes indicate that the exam was "difficult due to body habitus," Tr. 677, which Plaintiff interprets to mean that the examiner was unable to perform the test in the sitting and supine position, but there is no support for that interpretation in the record.[1] The only other straight leg test in the record was from 2011, which was negative. Tr. 307. In the absence of positive straight leg raise tests in both the sitting and supine position, the ALJ reasonably concluded that Plaintiff did not meet the requirements for Listing 1.04.

Plaintiff also asserts that the ALJ erred by failing to consider that the combined effects of her impairments equaled a listed impairment. "An ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination unless the claimant presents evidence in an effort to establish equivalence." *Burch*, 400 F.3d at 683; *see also Noah v. Colvin*, 6:15-CV-01803-BR, 2016 WL 4771063, at *4 (D. Or. Sept. 13, 2016) ("The ALJ is not required to explore the issue of equivalency to a Listing unless the claimant affirmatively asserts equivalency."). In this case, Plaintiff did not advance a theory of equivalency to the ALJ. Tr. 37-68.

---

[1] Plaintiff argues the ALJ erred by failing to further develop the record with respect to Plaintiff's leg raise tests. An ALJ has a special "duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983). An ALJ's duty to develop the record is "triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001). The ALJ's duty to develop the record does not extend to the diagnosis of a condition and claimants may not shift the burden of proving disability on to the ALJ. *Id.* at 459. The Court concludes that the record was adequate to allow the ALJ to properly evaluate step three and that the duty to further develop the record was not triggered.

In the absence of medical evidence to support either listing or establish medical equivalence, the ALJ properly concluded that Plaintiff did not meet the requirements of Listing 1.02 or Listing 1.04 at step three.

### III. Subjective Symptom Testimony

Plaintiff claims the ALJ failed to give clear and convincing reasons for rejecting her subjective symptom testimony. To determine whether a claimant's testimony is credible, an ALJ must perform a two-stage analysis. 20 C.F.R. § 416.929. The first stage is a threshold test in which the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012). At the second stage of the credibility analysis, absent evidence of malingering, the ALJ must provide clear and convincing reasons for discrediting the claimant's testimony regarding the severity of symptoms. *Carmickle v. Comm'r*, 533 F.3d 1155, 1160 (9th Cir. 2008).

The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014). An ALJ may use "ordinary techniques of credibility evaluation" in assessing a claimant's credibility, such as prior inconsistent statements concerning the symptoms, testimony that appears less than candid, or a claimant's daily activities. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008).

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause her symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms was not entirely credible. Tr. 20.

First, the ALJ noted that Plaintiff had misrepresented her reasons for discontinuing use of prescription painkillers.[2] Tr. 21. At the hearing, Plaintiff testified that she had recently stopped taking the pain medication because "it didn't make really much of a difference if [she] took it or if [she] didn't take it," and she "didn't like the way they made [her] feel." Tr. 44-45. The medical record reflects, however, that Dr. Hull discontinued Plaintiff's prescription for painkillers after Plaintiff tested positive for THC. Tr. 620. Plaintiff initially denied THC use to Dr. Hull, but admitted that she had a medical marijuana card after a positive THC test result. *Id.* When Dr. Hull told Plaintiff that he would not prescribe opioids for use in combination with marijuana, Plaintiff requested referral to a pain clinic. *Id.* The ALJ noted that Plaintiff misrepresented her marijuana use to Dr. Hull, at least initially, and then misrepresented her reasons for discontinuing her prescription painkillers in her testimony at the hearing. Tr. 21. An ALJ is entitled to consider such inconsistencies and less-than-candid testimony in weighing the claimant's credibility.

The ALJ also rejected Plaintiff's testimony that she regularly fell because her knees buckled. Tr. 21. At the hearing, Plaintiff testified that that she didn't go out "because it seems like my legs always give out and I wind up falling and then I hurt a shoulder or my leg." Tr. 45. Plaintiff testified that these falls were the result of her knee condition, citing specifically to an incident when she fell in November 2014. Tr. 48. The treatment records indicate that Plaintiff told her medical providers that she tripped over a cot and she did not mention her knees giving out.[3] Tr. 604. The ALJ could only identify one instance in the medical records in which a fall

---

[2] This is not, as Plaintiff appears to suggest, a situation where the ALJ found her not credible because she used medical marijuana. Rather, the issue is whether Plaintiff gave misleading information to her physician about her marijuana use and whether she gave misleading testimony during the hearing concerning her reasons for discontinuing prescription painkillers.

[3] In her briefing, Plaintiff asserts that her fall getting out of the shower was the result of her knee giving out. Pl. Br. 3. The medical records cited by Plaintiff indicate that the fall was the result of her foot sliding forward, rather than her knee giving out. Tr. 543. The confusion seems to stem from two falls occurring relatively close together. The

was attributed to her knees giving out. Tr. 21, 552. The ALJ reasonably concluded that Plaintiff's testimony was inconsistent with her reports to her treatment providers.

Third, the ALJ rejected Plaintiff's claims concerning the use of canes, walkers, and other assistive devices. Tr. 20. An ALJ is entitled to consider "non-prescribed" or "unwarranted" use of assistive devices in making a credibility determination. *See Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012). Plaintiff reported that she was prescribed crutches and a walker in 2005 and that she needed them to walk. Tr. 265. As previously discussed, Plaintiff's medical records do not indicate the long-term use of crutches, canes, or assistive devices, except as temporary treatment for an injury. Tr. 295, 552-53, 556-57. The third-party report of Plaintiff's mother likewise does not mention the use of any crutches or walkers. Tr. 273. The ALJ reasonably considered this issue in weighing Plaintiff's credibility.

Plaintiff also made inconsistent statements concerning her back pain and the effectiveness of her rhizotomy procedure. Tr. 21. The ALJ may properly consider a claimant's contradictory statements concerning the effectiveness of treatment. *See, e.g., Morgan v. Comm'r*, 169 F.3d 595, 599-600 (9th Cir. 1999). In 2012, Plaintiff underwent rhizotomy proceduures with Robert Trujillo, M.D., first on her right side and then on her left. Tr. 386. At the hearing, Plaintiff testified that she received "very minimal" relief from the procedures. Tr. 52. However, Plaintiff told Dr. Trujillo that the right side rhizotomy had "significantly improved her pain" by "about 60-70 percent." Tr. 386. Plaintiff returned to Dr. Trujillo for a repeat of the procedure on her left side. *Id.* Several months later, Plaintiff was "happy" and reported "approximately 60% relief in her overall back and buttock pain following the rhizolysis procedure." Tr. 674. Plaintiff also testified at the hearing that she had difficulty sitting due to

---

knee-related fall seems to have occurred in January 2014, while the shower fall occurred in April 2014. Tr. 543, 552.

her back pain. Tr. 49-50, 57. Shortly before the hearing, however, Plaintiff told Dr. Hull that her back pain was exacerbated by position changes, such as rising to stand from a chair, but that it "improves with sitting." Tr. 619. The Court concludes that the ALJ appropriately considered these contradictory statements.

The Court concludes that the ALJ gave sufficient clear and convincing reasons for discounting Plaintiff's subjective symptom testimony.

### IV. Medical Opinion Evidence

Plaintiff contends the ALJ erred by rejecting the medical opinions of treating physician Dr. Brandan Hull, which Plaintiff contends established that her limitations equaled a listed impairment.

The ALJ is responsible for resolving conflicts in the medical record. *Carmickle*, 533 F.3d at 1164. "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant[.]" *Turner v. Comm'r*, 613 F.3d 1217, 1222 (9th Cir. 2010) (internal quotation marks and citation omitted). An ALJ may reject the uncontradicted medical opinion of a treating or examining physician only for "clear and convincing" reasons supported by substantial evidence in the record. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). An ALJ may reject the contradicted opinion of a treating or examining doctor by providing "specific and legitimate reasons that are supported by substantial evidence." *Id.* Specific, legitimate reasons for rejecting a physician's opinion may include its reliance on a claimant's discredited subjective complaints, inconsistency with medical records, inconsistency with a claimant's testimony, inconsistency with a claimant's daily activities, or internal inconsistency. *Tommasetti*, 533 F.3d at 1041; *Andrews*, 53 F.3d at 1042-43; *Morgan*, 169 F.3d at 601-03.

Although the ALJ is required to evaluate every medical opinion, the ALJ is only required to discuss "significant probative" evidence in his detailed findings. *Vincent on behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (controverted medical opinion found to be neither significant or probative).

In this case, Plaintiff asserts that the ALJ neglected to discuss the opinion of her treating physician, Brandan Hull, M.D. In particular, Plaintiff points to a treatment note from February 22, 2011, in which Plaintiff complained of back pain. Tr. 306. In that treatment note, Dr. Hull recorded that:

> [Plaintiff] is planning to file for disability, which sounds appropriate. She cannot stand for any length of time due to her knees and her back. She is trying to walk, but can only make it 3 houses because of pain so she turns back then rests. She feels trapped by her weight, back pain, knee pain and inability to exercise.

*Id.*

The ALJ did discuss Dr. Hull's objective findings and his treatment recommendations from the February 2011 examination, but did not discuss Dr. Hull's remarks concerning Plaintiff's inability to stand or walk for a significant distance, or his belief that an application for disability "sounds appropriate." Tr. 22. The statements summarize Plaintiff's subjective symptom complaints, as she related to Dr. Hull, rather than Dr. Hull's own objective medical findings.

Additionally, the record indicates that Plaintiff's period of disability did not begin until several months later, in July 2011, when Plaintiff was injured in a fall and stopped working. Tr. 42, 674. At the time of Dr. Hull's February 2011 treatment note, Plaintiff was working as a tractor-trailer-truck driver, which was medium work. Tr. 62. Plaintiff reported that she worked twelve or more hours per day, seven days per week. Tr. 247-48. Plaintiff could and did continue to work at the medium level until her injury, despite the limitations she reported to Dr. Hull.

The Court concludes that Dr. Hull's February 2011 report was not significant probative evidence and that the ALJ was not obliged to discuss it. As Plaintiff could and did continue working after Dr. Hull's examination, the Court concludes that any error was harmless.

## CONCLUSION

Pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the Commissioner is AFFIRMED and this case is DISMISSED. Final judgment shall be entered accordingly.

DATED this 7th day of May, 2018.

                                                  s/Michael J. McShane
                                                  MICHAEL McSHANE
                                                  United States District Judge